IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00422

| | |
|---|---|
| NEEDHAM CURTIS BARBOUR; and EDWARD BRIAN DUNN, on their own behalf and on behalf of all others similarly situated,<br><br> *Plaintiffs*,<br><br> v.<br><br>BEDDINGFIELD DRUGS, LLC,<br><br> *Defendant.* | **COLLECTIVE AND CLASS ATION COMPLAINT AND JURY DEMAND** |

Plaintiffs Needham Curtis Barbour; and Edward Brian Dunn; et al ("Plaintiffs"), through their counsel, the law firm of Williams & Ray, PLLC, for their Collective Action Complaint and Jury Demand against Beddingfield Drugs, LLC, ("Defendant") for the causes of action including Unpaid Wages and Unpaid Overtime show the following:

## I.   INTRODUCTION

1. Plaintiffs and those similarly situated are currently, or were formerly, employed by Defendant to provide pharmacy delivery driving services. Defendant failed to pay wages and/or overtime wages despite the fact that Plaintiff and those similarly situated regularly worked over forty hours in a single work week.

2. Defendant thus violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. ¶¶ 201 *et seq*, and North Carolina Wage and Hour Act (the "NCWHA"), N.C. Gen. Stat. Ann. § 95-25.1 *et seq*.

3. Defendant violated the FLSA and the NCWHA, because those laws require employers to pay their employees one-and-one-half times each employee's regular rate of pay for

each hour worked beyond forty in a given workweek, pay minimum wage, and pay wages for all hours actually worked. Defendant's violations of the FLSA and the NCWHA were willful and deliberate.

4. Plaintiffs seek compensation for Defendant's violations of the FLSA and NCWHA, on their own behalf and on behalf of all other similarly-situated employees of Defendant.

## II.  JURISDICTION AND VENUE

5. This Court has Jurisdiction over this case pursuant to 28 U.S.C. §1331; this case arises under the laws of the United States. This action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

6. Plaintiffs respectfully request that this Court exercise supplemental jurisdiction over their claims under North Carolina law, pursuant to 28 U.S.C. §1367.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claims of the named Plaintiffs occurred in the Eastern District of North Carolina, Defendant is registered to do business in the State of North Carolina and it conducts substantial business in the State of North Carolina.

## III.  PARTIES

8. Plaintiff Needham Curtis Barbour ("**Mr. Barbour**") is a resident of North Carolina and was employed by Defendants from approximately May of 2012 through approximately May of 2021. Plaintiff Barbour's signed FLSA Consent to Sue Form is attached hereto as Exhibit 1.

9. Plaintiff Edward Brian Dunn ("**Mr. Dunn**") is a resident of North Carolina and was employed by Defendants from approximately 2014 through approximately January of 2020. Plaintiff Dunn's signed FLSA Consent to Sue Form is attached hereto as Exhibit 2.

10. Defendant Beddingfield Drugs, LLC ("**Beddingfield**") is a pharmacy business registered with the North Carolina Secretary of State, with its principle and registered office located at 114 W Main Street, Durham, NC 27701, where it may be served. Beddingfield also operates a named pharmacy at 95 Springbrook Ave #101, Clayton, NC 27520.

## IV. FACTUAL ALLEGATIONS

### A. General Allegations

11. Beddingfield Drugs is a pharmaceutical provider that employs delivery drivers to provide pharmaceutical delivery services to its customers in various parts of North Carolina.

12. Beddingfield Drugs serves Johnston County.

13. Defendant also operates through Gurley's Pharmacy, which provides delivery services to Durham, Raleigh, and Chapel Hill.

14. Defendant also operates through Holly Park Pharmacy, which provides delivery services to Wake County.

15. Plaintiffs and those similarly situated worked as hourly employees for Beddingfield and their primary job responsibility was to perform pharmacy related deliveries (hereinafter referred to as "Drivers").

16. The Drivers had no supervisory authority whatsoever.

17. To that end, the Drivers were directed to report to their assigned pharmacy at 9:00 am every day, Monday through Friday. After reporting to work, the Drivers would receive their report of deliveries for the day.

18. After receiving the report of deliveries, the Drivers would work with the pharmacists to assemble the packages set for delivery and, once all the packages were assembled, they began their delivery route.

19. On many days, the packages were not set for delivery until approximately 12:00 PM.

20. Defendant and Defendant alone dictated when, where, and how the deliveries were to transpire.

21. Ordinarily, the Defendant would assign between 20 and 25 deliveries per day to the Drivers.

22. Defendant set the Drivers' schedules, including when to start and end work, and what days the Drivers were required to work.

23. Specifically, Defendant would dictate that the Drivers' shifts were to start at 9:00 am and run until 6:00 pm each weekday.

24. Defendant knew that, under ordinary traffic conditions, 20 to 25 deliveries per day would be difficult for the Drivers to complete during their scheduled shift.

25. As a result, the Drivers worked a fluctuating number of hours that regularly totaled more than forty hours per week.

26. Defendant advertised that the pharmaceutical deliveries would be completed the same or next day, depending on when the order was placed.

27. Because the delivery of pharmaceutical drugs is generally time sensitive, if Defendant could not deliver the drugs when promised, it would contact the customer to inform them of the delay.

28. As a result, Defendant knew that its Drivers could not always complete the deliveries within the Drivers' scheduled shifts.

29. However, when Beddingfield Drivers would work more than forty hours, Beddingfield would either not pay for the additional time or, in the event it would pay the Drivers, it would pay straight time and not include any overtime premiums in that amount.

30. Both Plaintiffs individually inquired about payment for working in excess of forty hours and both were told by agents of Beddingfield that Beddingfield does not pay overtime to its employees.

### B. Allegations Pertaining to Mr. Barbour

31. Plaintiff Barbour began working for Vedic Pharmacy Group in or around May of 2012. Vedic Pharmacy Group incorporated one of its pharmacies as Beddingfield Drugs, LLC in June of 2014, whereupon Mr. Barbour became an hourly-paid employee of Beddingfield. Mr. Barbour worked for Beddingfield until May of 2021.

32. Over the final three years of his employment with Beddingfield, Mr. Barbour was paid an hourly wage of between $14 and $15 per hour. He received incremental raises on an approximately annual basis.

33. Plaintiff Barbour was directed to report to the Beddingfield Drugs store located at 95 Springbrook Ave #101, Clayton, NC 27520.

34. Like the other Drivers, Plaintiff Barbour initially began his shift by reporting to the pharmacy at 9:00 AM.

35. Over time, because the delivery packages were not ordinarily ready until around mid-day, in an effort to maximize the time spent conducting deliveries, Plaintiff Barbour was permitted to begin his shift at 10:00 AM.

36. After receiving the deliveries, Plaintiff Barbour would set out for the day and work through the list of assigned deliveries.

37. Despite not taking breaks or stopping to eat lunch, Plaintiff Barbour was regularly unable to complete all the assigned deliveries during his shift.

38. Defendant knew that Plaintiff Barbour could not always complete all the assigned deliveries during his scheduled shift.

39. Because Defendant guaranteed delivery on a certain day, it was upset when Plaintiff Barbour could not complete the assigned deliveries. In fact, on many occasions, Plaintiff Barbour was reprimanded for failure to complete the assigned deliveries.

40. On these instances, Mr. Barbour was told that it was expected for him to complete the assigned deliveries on that day.

41. As a result, Plaintiff Barbour was expected to, and did in fact, continue making deliveries after his shift ended.

42. Additionally, Plaintiff Barbour was expected to, and did in fact, work on Saturdays to complete any deliveries that were not made by the end of the week.

43. On average, Plaintiff Barbour worked eight hours of overtime per week during the week to complete his deliveries.

44. Plaintiff Barbour was not paid for any of this additional work.

45. Additionally, Plaintiff Barbour worked multiple four-hour shifts on Saturdays during his employment. For these shifts, despite Plaintiff Barbour working more than forty hours in the week, Defendant paid Plaintiff Barbour straight time.

46. On multiple occasions, Plaintiff Barbour inquired with Defendant about overtime pay and was uniformly told that Defendant "did not pay overtime."

47. In early May of 2021, Plaintiff Barbour again spoke to Beddingfield regarding outstanding overtime pay he was owed and its policy of not paying overtime. He was told that Beddingfield could not pay him overtime but that it would instead offer him a raise in his hourly pay.

48. Several days later, Mr. Barbour was told that he would be receiving a $2 per hour raise that would bring his hourly wage up to $17 per hour.

49. The following week, Mr. Barbour's employment with Beddingfield was terminated.

### C. Allegations Pertaining to Mr. Dunn

50. Plaintiff Dunn began working for Beddingfield in 2014 as an hourly-paid employee.

51. Over the final three years of his employment with Beddingfield, Mr. Dunn was paid an hourly wage of approximately $14 per hour.

52. Plaintiff Dunn was directed to report to the Holly Park Pharmacy which was then located at 3085 Wake Forest Road, Raleigh NC 27609.

53. Like the other Drivers, Plaintiff Dunn was required to report at 9:00 am and await assignment of the daily deliveries.

54. After receiving the deliveries, Plaintiff Dunn would set out for the day and work through the list of assigned deliveries.

55. Despite not taking breaks or stopping to eat lunch, Plaintiff Dunn was regularly unable to complete all the assigned deliveries during his shift.

56. Defendant knew that Plaintiff Dunn could not always complete all the assigned deliveries during his scheduled shift.

57. Defendant advertised that the pharmaceutical deliveries would be completed the same or next day, depending on when the order was placed.

58. Because Defendant guaranteed delivery on a certain day, it was upset when Plaintiff Dunn could not complete the assigned deliveries. In fact, on many occasions, Plaintiff Dunn was reprimanded for failure to complete the assigned deliveries.

59. On these instances, Plaintiff Dunn was told that it was expected for him to complete the assigned deliveries on that day.

60. As a result, Plaintiff Dunn was expected to, and did in fact, continue making deliveries after his shift ended.

61. On these occasions, Plaintiff Dunn would work until 7:00 pm or later to complete the assigned deliveries.

62. However, despite knowing about the additional work, Plaintiff Dunn's supervisor would enter a 6:00 pm departure time on Plaintiff Dunn's time sheet every day. By marking Plaintiff Dunn's time sheet in such a fashion, Defendant showed in its records that Plaintiff Dunn worked exactly 40 hours per week, every week.

63. As a result, Plaintiff Dunn was not paid for the additional work he did during the week to complete his deliveries.

64. Plaintiff Dunn worked approximately eight hours per week for which he was not compensated whatsoever.

65. Additionally, Plaintiff Dunn was expected to, and did in fact, work on Saturdays to complete any deliveries that were not made by the end of the week.

66. Over the course of a year, Plaintiff Dunn worked dozens of four-hour shifts on Saturdays. Mr. Dunn was not paid whatsoever for these Saturday shifts.

67. Because Defendant would contact its customers if a delivery was delayed until Saturday, it knew that Mr. Dunn was in fact working on these days.

68. In January of 2020, Mr. Dunn's employment with Beddingfield was terminated.

## 216(b) COLLECTIVE ACTION ALLEGATIONS

69. Plaintiffs assert their Count I claim under the FLSA pursuant to 29 U.S.C. § 216(b), on behalf of their individual selves and on behalf of all similarly situated employees currently and formerly employed by Defendant.

70. Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the "216(b) Class" as follows:

> ALL CURRENT AND FORMER DELIVERY DRIVERS OR OTHER HOURLY EMPLOYEES OF THE DEFENDANT WHO PROVIDED DELIVERY SERVICES WHO WERE NOT PROPERLY COMPENSATED FOR HOURS WORKED IN EXCESS OF 40 HOURS PER WEEK.

71. All potential FLSA class Members are similarly situated because, among other things, they were all hourly employees of Defendant and, upon information and belief, all suffered from the same policies of Defendants, including:

   a. Failing to pay overtime premiums;
   b. Failing to compensate employees for all hours actually worked; and
   c. Failing to pay class Members at least statutory minimum wage on each pay day as mandated by the FLSA.

### **RULE 23 CLASS ALLEGATIONS**

72. Plaintiffs assert their Count II claims as a Fed. R. Civ. P. 23 class action on their own behalf and on behalf of a class for which Plaintiffs seek certification.

73. Pending any modifications necessitated by discovery, the Plaintiffs preliminarily define this "Rule 23 Class" as follows:

> ALL CURRENT AND FORMER DELIVERY DRIVERS OR OTHER HOURLY EMPLOYEES WHO PROVIDED DELIVERY SERVICES FOR THE DEFENDANT WHO WERE NOT PROPERLY COMPENSATED FOR HOURS WORKED IN EXCESS OF 40 HOURS PER WEEK

74. Upon information and belief, Defendant did not pay the putative class members for overtime for hours worked in excess of 40 in a week. Instead, Defendant only paid the class members for some of the hours they worked, and either did not pay them at all for hours worked in excess of 40 in a week or only paid them their regular hourly rate, rather than time-and-a-half.

75. The class is so numerous that joinder of all potential class members is impracticable. Plaintiffs do not know the exact size of the Class since that information is within the control of Defendant.

76. The named Plaintiffs estimate that there were approximately 8 similarly situated hourly employees at any given time who worked for Defendant in North Carolina. The exact size of this class will be easily ascertainable from Defendant's employment records.

77. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: how Defendant compensated its employees for hours worked in excess of 40 in a week; whether Defendant compensated its employees for all hours they worked; and whether Defendant paid its employees at least minimum wage and overtime.

78. The class claims asserted by Plaintiffs are typical of claims of all of the potential Class Members. This is an uncomplicated case of unpaid wages, and the class claims are typical of those pursued by victims of these violations. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of the judicial economy.

79. The named Plaintiffs will fairly and adequately protect and represent the interests of the class. Plaintiff Barbour was an employee of Defendant and was the victim of the same violations of law as other class members, *i.e.*, the failure to compensate employees for all hours worked and the failure to compensate employees for overtime.

80. The named Plaintiffs are represented by competent counsel experienced in wage and hour litigations.

81. The prosecution of separate actions by the individual potential Class Members would create a risk of inconsistent or varying adjudications with respect to individual potential Class Members that would establish incompatible standards of conduct for Defendant.

82. Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

83. The Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

84. The Plaintiffs are unaware of any pending litigation commenced by members of the Class concerning the instant controversy.

85. It is desirable to concentrate this litigation in this forum because Defendant Beddingfield Drugs, LLC is headquartered and does a significant amount of business in this jurisdiction.

86. This class action will not be difficult to manage due to the uniformity of claims among the Class Members and the susceptibility of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

87. The contours of the Class will be easily defined by reference to the payroll documents Defendant was legally required to create and maintain, pursuant to the FLSA and its regulations, including 29 C.F.R. § 516.2. Notice will be easily distributed as all members of the putative class are or were recently employed by Defendant, who was required to create and maintain records containing the mailing addresses of each such class member.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq*.**

88. The Plaintiffs re-allege and incorporate by reference all previous paragraphs of the Complaint as if fully rewritten herein.

89. Plaintiffs and those similarly situated worked for Defendant.

90. The named Plaintiffs assert this claim on behalf of their individual selves and all others similarly situated, pursuant to 29 U.S.C. §216(b).

91. The named Plaintiffs and the members of the 216(b) class assert this claim against the Defendant, Beddingfield Drugs, LLC for all work at all locations where members of the class were employed by this Defendant.

92. During all times relevant to this action, the named Plaintiffs and others similarly situated were employees of Defendant as defined by 29 U.S.C. § 203(e).

93. During all times relevant to this action, the named Plaintiffs and others similarly situated were employed by Defendant as defined by 29 U.S.C. § 203(g).

94. During all times relevant to this action, Defendant was the named Plaintiffs' and class members' employer pursuant to 29 U.S.C. § 203(d), and so indicated on Plaintiffs' pay stubs.

95. During all times relevant to this action, the named Plaintiffs and others similarly situated were employed by Defendant in an "enterprise engaged in commerce or in the production of goods for commerce," as defined by 29 U.S.C. § 203(s)(1).

96. During all times relevant to this action, the named Plaintiffs and others similarly situated were employed by Defendant for handling and otherwise working on goods or materials that had been moved in or were produced for commerce by any person. 29 U.S.C. § 203(s)(1).

97. Upon information and belief, Defendant had annual gross revenues in excess of $500,000 and employed two or more persons, including the named Plaintiffs, who handled and worked on materials which had been moved in interstate commerce.

98. Defendant employed the named Plaintiffs and others similarly situated in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a).

99. The named Plaintiffs and others similarly situated regularly worked more than 40 hours in a week and were not paid all required wages and overtime.

100. Defendant violated the FLSA by failing to pay the Plaintiffs and others similarly situated overtime as required by 29 U.S.C. §§ 206-207.

101. Defendant's failure to pay the named Plaintiffs and others similarly situated their federally mandated overtime constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a) because, among other reasons, Defendant knew Plaintiffs and others similarly situated were working overtime, but nevertheless did not characterize any of Plaintiffs' overtime hours worked as such. Moreover, when confronted about its failure to pay deserved overtime by Plaintiff Mr. Barbour, Defendant responded in a retaliatory fashion, terminating Mr. Barbour's employment.

102. Defendant is liable to the named Plaintiffs and the 216(b) Class for unpaid minimum wage, unpaid overtime wages, liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, et. seq.

103. The named Plaintiffs re-allege and incorporate by reference all previous paragraphs of the Complaint as if fully rewritten herein.

104. The named Plaintiffs assert this claim on behalf of their individual selves and all others similarly situated, as defined by the class described in "Rule 23 Class Allegations" above, pursuant to Fed. R. Civ. P. 23.

105. The named Plaintiffs and those similarly situated worked for Defendant as hourly employees.

106. The named Plaintiffs and those similarly situated regularly worked more than forty hours in a given workweek and were not paid for each hour worked as required by N.C. Gen. Stat. Ann. § 95-25.4.

107. Defendant failed to pay the named Plaintiffs and others similarly situated the minimum wage required by N.C. Gen. Stat. Ann. § 95-25.3.

108. Defendant also failed to pay the named Plaintiffs and others similarly situated their wages for all hours worked, as required by N.C. Gen. Stat. Ann. § 95-25.6.

109. Defendant's failure to pay the named Plaintiffs and those similarly situated was willful and deliberate, and Defendant knew its actions violated the law.

110. The named Plaintiffs and those similarly situated are entitled to recover their overtime, unpaid wages, minimum wages, and attorneys' fees, costs, and interest where permitted by state law.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs and those similarly situated respectfully request that this Court enter an order or orders:

a. Certifying an opt-in class and subclass pursuant to the FLSA, 29 U.S.C. §§ 201 et seq.;

b. That appropriate notice of this suit and the opportunity to opt into it be provided to all potential members of the 216(b) Class;

c. Awarding the Plaintiffs and the 216(b) Class unpaid wages, minimum wage, and overtime pursuant to 29 U.S.C. §§ 206, 207, 216;

d. Awarding the Plaintiffs and the 216(b) Class liquidated damages and penalties pursuant to 29 U.S.C. § 216(b);

e. Awarding the Plaintiffs and the 216(b) Class costs and attorney fees pursuant to 29 U.S.C. § 216(b);

f. Certifying this action as a class action pursuant to Fed. R. Civ. P. 23;

g. Appointing Plaintiffs as class representatives of the Rule 23 Class as defined above;

h. Appointing the undersigned counsel as Class Counsel for the Rule 23 Class;

i. Awarding the Plaintiffs and the Rule 23 Class their damages for unpaid wages, minimum wage, and overtime and any applicable penalties pursuant to N.C. Gen. Stat. Ann. § 95-25.22;

j. Awarding Plaintiffs and the Rule 23 Class costs, attorney fees, and interest as permitted by law;

k. Authorizing an incentive fee to the Rule 23 class representative; and

l. Granting such other and further relief as this Court deems just and proper.

Respectfully submitted this date, Wednesday, October 19, 2022.

**Williams & Ray, PLLC:**
*Attorneys for Plaintiffs*


/s/ Adam W. Ray
Adam W. Ray
Attorney at Law
  Bar No.: 57035
  Williams & Ray, PLLC

555 Fayetteville St., Ste. 201
Raleigh, NC 27601
Phone: (888) 315-3841
Fax: (303) 502-5821
Email: aray@williamsray.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been duly served on all counsel of record by filing it with the Clerk of the Court using the CM/ECF System.

This date, Wednesday, October 19, 2022.

**Williams & Ray, PLLC:**
*Attorneys for Plaintiffs*

/s/ Adam W. Ray
Adam W. Ray
Attorney at Law
 Bar No.: 57035
 Williams & Ray, PLLC
 555 Fayetteville St., Ste. 201
 Raleigh, NC 27601
 Phone: (888) 315-3841
 Fax: (303) 502-5821
 Email: aray@williamsray.com